DWIGHT GOSS, RECEIVER, ETC., v. RICHARD G. PETERS ET AL.

*Mutual fire insurance companies—Ultra vires—Estoppel—Bond—Liability of obligors.*

1. An arrangement by which the directors of a manufacturers' mutual fire insurance company, organized under Act No. 78, Laws of 1883 (3 How. Stat. chap. 134a), which provides no method for raising funds to meet the obligations of the company other than by the payment of cash premiums and assessments upon the deposit notes or agreements of policy-holders, execute a bond to the company for the purpose of establishing a reserve guaranty fund to its assets, to be drawn upon by the board of directors whenever they shall deem it necessary to protect policy-holders from assessment upon their

deposit notes, and which makes the obligors creditors of the company to the amount of all such advances, is void.

2. As all members of the company must be held to have had knowledge of the law, and of the articles of association, subject to which every policy is issued and received, and to have known that any such management of the company would be unlawful, the obligors are not estopped from raising the question of *ultra vires* in a suit upon the bond.

Error to Kent. (Grove, J.) Argued November 15 and 16, 1893. Decided December 8, 1893.

Debt. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Dwight Goss* and *M. C. Burch* (*Peter Doran*, of counsel), for appellant.

*Uhl & Crane*, for defendants Long, Matter, and Sands.

*Fletcher & Wanty*, for defendant Peters.

HOOKER, C. J. The plaintiff is receiver of a mutual fire insurance company, organized in the year 1885, under Act No. 78, Laws of 1883, and the amendments thereof (3 How. Stat. chap. 134*a*). In February, 1891, the affairs of the company were placed in the hands of the secretary as receiver, upon the petition of the State Commissioner of Insurance, at the instance of the directors of the company. Subsequently the plaintiff was appointed receiver. As such receiver he came into possession of a bond made by the defendants, who were at the time directors of the company, of which bond the following is a copy:

## "GUARANTY BOND.

"Know all men by these presents, that in consideration of the covenants and agreements herein contained to be kept and performed by the Manufacturers' Mutual Fire

Insurance Company, of the city of Grand Rapids, county of Kent, and State of Michigan, we:

"R. G. Peters, of Manistee, Michigan,
"Louis Sands,      "        "        "
"George H. Long, Grand Rapids,.  "
·  "Wm. Dunham,        "        "        "
"Elias Matter,        "        "        "
"William H. Fowler,  "        "        "

—Are held and firmly bound unto the said Manufacturers' Mutual Fire Insurance Company in the sum of one hundred thousand dollars, good and lawful money of the United States, to be paid to said Manufacturers' Mutual Fire Insurance Company, for which payment, well and truly to be made, we do bind ourselves, our heirs, executors, and administrators, by these presents.

"Sealed with our seals, and dated the 1st day of January, A. D. 1890.

"The conditions of this bond are such that it is made for the purpose of establishing a reserve guaranty fund to the assets of the said Manufacturers' Mutual Fire Insurance Company, and is to be drawn upon by the board of directors of said company whenever said board of directors shall deem it necessary to protect its policy-holders from assessments upon their deposit notes, to pay losses and expenses in excess of the cash assets of said company, at any time or times. The said Manufacturers' Mutual Fire Insurance Company hereby agrees to pay to the persons giving this bond semi-annual interest on the face of this bond at the rate of four per cent. per annum, and to reimburse said bondsmen for any amount or amounts which said company may from time to time draw on this bond, with interest at the rate of six per cent. per annum on such sums or sum drawn for the length of time retained by this company, as soon as the accumulated cash premiums and assets of the company will permit.

"It is also further agreed that the person or persons advancing money on this bond to said insurance company, and the persons bound by this obligation, shall be considered as creditors of said Manufacturers' Mutual Fire Insurance Company to the amount of such advances and the interest on the same, as above agreed upon, and to the extent of all interest accrued on this bond.

"This bond may be canceled at any time by either the

said insurance company or bondsmen, by giving one year's notice of such intention.

> " R. G. PETERS.        [Seal.]
> " LOUIS SANDS.        [Seal.]
> " GEORGE H. LONG.   [Seal.]
> " WM. DUNHAM.        [Seal.]
> " ELIAS MATTER.      [Seal.]
> " WM. H. FOWLER.   [Seal.] "

Upon a petition made by policy-holders who had sustained losses, the court made an order that the receiver bring an action upon the bond, which was done. He brings the case to this Court by appeal from a judgment in favor of defendants upon a verdict rendered by direction of the court.

By the terms of the act under which the company was organized, its object was mutual insurance by manufacturers. Payment of losses was assured by the payment of cash premiums and notes of the policy-holders, called "deposit notes or agreements," which were deposited with the company, and upon which assessments were to be made to meet losses and expenses. This is the only method provided by law for raising funds to meet the obligations of the company. The condition of the bond implies that the officers were to borrow money of the obligors, to pay losses and expenses, whenever the cash assets were inadequate. The bond indicates that no assessment was to be made against the deposit notes at any time. A circular of the company, offered, but not admitted, in evidence, indicates, however, that the deposit notes were to be assessed to the extent of 20 per cent. per year, and it is asserted that the company advertised a guaranty fund of $100,000 as a protection against a greater assessment. It is manifest that, if the former inference is to be drawn, the bond was in pursuance of an arrangement not contemplated by the law, and, if the latter, the schemes only differ in the degree that policy-holders were to be relieved

from their statutory liability to assessment. All members of the company must be held to have knowledge of the law, and of the articles of association of the company, subject to which every policy is issued and received, and to know that any such management of the company would be unlawful. It follows that there is no opportunity for the application of the doctrine of estoppel, and that the question of *ultra vires* may be raised by the defendants. *Transportation Co. v. Car Co.*, 139 U. S. 60.

Furthermore, it is apparent that, if the defendants were required to advance this money to pay losses and expenses, they would then become creditors of the company, in which case it would be the duty of the company to repay them, with interest. Without determining that this company could under no circumstances borrow money, it is certainly true that the law does not provide for borrowing a fund wherewith to carry out a scheme like the one mentioned, or provide for assessments to repay it. If the law does not permit this, the defendants ought not to be required to loan money to the company or receiver. If, on the other hand, the scheme is lawful, the receiver must at once assess to repay.

But we think the arrangement was clearly void, and that, instead of relying upon the enforcement of a contract to loan the company money, the duty of the receiver is to proceed to assess the members according to law, for the purpose of obtaining the funds to pay the debts of the concern.

The court properly directed a verdict for the defendants, and the judgment is affirmed.

McGRATH, LONG, and GRANT, JJ., concurred. MONTGOMERY, J., did not sit.